*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* LEWIS, Minors.

UNPUBLISHED
May 21, 2025
9:19 AM

No. 373233
Cass Circuit Court
Family Division
LC No. 23-000063-NA

Before: PATEL, P.J., and BOONSTRA and CAMERON, JJ.

PER CURIAM.

Respondent-mother appeals by right the trial court's order terminating her parental rights to the minor children LL, AL, and RL under MCL 712A.19b(3)(c)(*i*), (g), and (j). We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In August 2023, a Children's Protective Services (CPS) caseworker filed a petition for removal of the three children from respondent's home. The petition alleged that the home conditions were deplorable, with wet and dirty flooring, a leaking toilet, an exposed electrical outlet, holes in the walls, meager furniture, and almost no food. Despite efforts by CPS to work with respondent to formulate a safety plan, respondent had been uncooperative. The petition also alleged that respondent had demonstrated delusional and paranoid thinking, such as stating that CPS was bugging her apartment. The petition also noted that respondent had been the victim of domestic violence perpetrated by the children's father in 2018.[1] After an emergency preliminary hearing, the trial court granted the petition and ordered that the children be placed with their paternal grandparents. Respondent moved into a motel room with her father.

Shortly thereafter, the petition was amended to include information regarding an incident in which respondent behaved in a frantic and erratic manner at a Department of Health and Human Services (DHHS) office. According to a CPS investigator and a foster-care caseworker who

---

[1] The children's legal father was a respondent in the proceedings below, and his parental rights to the three children were also terminated. He is not a party to this appeal.

witnessed the incident, respondent screamed, accused employees of stealing her children, and demanded information about her children. DHHS workers informed her that the children were safe, but respondent did not appear to comprehend what people were saying to her, or be able to formulate complete sentences. Respondent was removed from the office by law enforcement. The amended petition also included information from a licensed psychologist's evaluation of the oldest child, LL, who had exhibited signs of psychological neglect and abuse because of respondent's mental health and behaviors. The trial court authorized the petition.

After an adjudication bench trial, the trial court held that there were statutory grounds to exercise jurisdiction over the children. Respondent was ordered to engage with services and counseling before she could be granted parenting time.

Over the course of the next nine months, the trial court received updates at review hearings, which respondent did not attend. Respondent's caseworker reported that respondent had refused to participate in any services except for one psychological evaluation. The results of that evaluation indicated that respondent had significant mental-health concerns and cognitive impairments. Respondent was also not communicating with foster-care workers or with her counsel. Her exact living arrangements and employment were unknown. The children's foster-care caseworker reported that the children were thriving in their placement with their grandparents. Each child demonstrated significant improvements and had conveyed feeling safe and happy in the placement. The caseworker testified that the grandparents were doing an exceptional job addressing each of the children's specific needs and generally providing a stable, consistent environment.

At a permanency planning hearing in June 2024, the trial court was informed that respondent had been arrested and charged with driving under the influence of drugs. Respondent had not engaged in any services or communicated with her caseworker or counsel. Respondent had never engaged in parenting time or contacted her caseworker to inquire about her children. The trial court ordered petitioner to file a termination petition based on respondent's lack of engagement with services.

At the termination trial in July 2024, the trial court heard evidence that respondent had refused to engage with services. The children, although doing very well, still required extensive support, which the grandparents were able to provide through adoption. The trial court heard additional testimony that an adoptive placement—as opposed to a guardianship—was in the best interests of the children for several reasons. These reasons included the higher level of services and financial support that would be available for an adoptive placement, the children's desire to stay with their grandparents, the lengthy process that obtaining a guardianship would entail, the likely inability to secure a guardianship for the younger children, and the ultimate need for permanency. The trial court found that statutory grounds existed to support termination. Regarding best interests, the trial court made the following findings:

> [The lawyer-guardian ad litem and foster-care worker] both indicated that it was in Minor Children's best interest to terminate parental rights.
>
> Minor Children's service providers all cited Minor Children's safe and predictable environment and caregivers as a major reason for their emotional well-

being. Paternal Grandparents have consistently participated in Minor Children's treatment and voluntarily increased their knowledge of Minor Children's needs.

Minor Children have regular contact with their extended family in their current home and will continue that contact if they remain in their home.

As previous stated, Minor Children are placed with their Paternal Grandparents who are willing and able to provide long term care for Minor Children. These caregivers want to adopt Minor Children and [LL], age 11 years, voiced that he wants to stay in their home permanently. Minor Children, [AL] and [RL], are 5 and 4 years old, and have not given their preference for permanency. Adoption would provide greatest permanency for Minor Children. Changing L.L's permanency plan to guardianship, just based on his age, is not in his best interest. There is no evidence that seeking guardianship for [LL], instead of adoption, would create a better environment or encourage Respondent Mother and Respondent Father to be a healthy addition to his life. He is placed in the same home with the same caregivers as his siblings.

The trial court found that termination was in the children's best interests and ordered that respondent's parental rights be terminated. This appeal followed.

## II. STANDARD OF REVIEW

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proven by clear and convincing evidence." *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020) (quotation marks and citation omitted).[2] "[O]nce a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "[W]hether termination of parental rights is in the best interests of the child must be provided by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). We review for clear error

---

[2] Respondent does not challenge the trial court's findings regarding statutory grounds. Therefore, we leave undisturbed those findings and the trial court's determination that statutory grounds existed. See *In re JS & SM*, 231 Mich App 92, 98-99; 585 NW2d 326 (1998), overruled in part on other grounds *In re Trejo*, 462 Mich 341; 612 NW2d 407 (2000). We note that, having reviewed the record, we would conclude in any event that the trial court did not clearly err by finding statutory grounds for termination. With respect to MCL 712A.19b(3)(c)(*i*), the trial court properly found that, given the children's age, respondent did not demonstrate a reasonable likelihood of rectifying the conditions that prompted adjudication in a reasonable amount of time. See *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009). The trial court also properly found that respondent's refusal to participate in any services—including her substantial mental-health service needs—supported termination under MCL 712A.19b(3)(g) and MCL 712A.19b(3)(j). See *In re White*, 303 Mich App 701, 711; 846 NW2d 61 (2014); see also *In re Pederson*, 331 Mich App at 472-473; *In re Rippy*, 330 Mich App 350, 358-360; 948 NW2d 131 (2019); *In re BZ*, 264 Mich App 286, 300-3001; 690 NW2d 505 (2004).

-3-

the trial court's decision regarding the child's best interests. *In re Olive/Metts Minors*, 297 Mich App at 40. "A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made . . . ." *In re Pederson*, 331 Mich App at 472 (quotation marks and citation omitted). Furthermore, a trial court's factual findings are sufficient if it "appears that the trial court was aware of the issues in the case and correctly applied the law," and when "appellate review would not be facilitated by requiring further explanation." *Ford Motor Co v Dep't of Treasury*, 313 Mich App 572, 589; 884 NW2d 587 (2015) (quotation marks and citation omitted).

## III. BEST-INTEREST DETERMINATION

Respondent argues that the trial court erred by determining that termination was in the children's best interests, because it failed to consider that the children were placed with a relative. We disagree.

A trial court may consider several factors to determine whether termination of parental rights is in the children's best interests; these factors include "the child's bond to the parent[;] the parent's parenting ability[;] the child's need for permanency, stability, and finality[;] and the advantages of a foster home over the parent's home . . . ." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015) (quotation marks and citation omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's wellbeing while in care, and the possibility of adoption." *In re Rippy*, 330 Mich App 350, 360-361; 948 NW2d 131 (2019) (quotation marks and citations omitted).

"A child's placement with relatives is a factor that the trial court is required to consider." *Gonzales/Martinez*, 310 Mich App at 434. "Generally, a child's placement with relatives weighs against termination . . . ." *Id*. (quotation marks and citation omitted). Grounds for reversal may exist if consideration of relative placement is "*wholly* absent from the trial court's best-interests determination." *In re CJM*, ___ Mich App ___, ___; ___ NW3d ___ (2024); (Docket No. 367565); slip op at 5-6 (emphasis added). But the record shows that a trial court was aware that a child is with a relative who is willing to adopt the child, then such considerations were not wholly absent. See *id*.

The record in this case shows that trial court made extensive findings that demonstrate express consideration of the children's placement with their relative-grandparents. See *In re Gonzales/Martinez*, 310 Mich App at 434. The trial court explicitly considered that placement and the grandparents' willingness to adopt the children when making its best-interest determination. It also considered whether guardianship would better serve the children's best interests than adoption. Ultimately, the trial court then observed that adoption was more supportive of the children's best interests than a guardianship or returning the children to respondent, primarily because the children needed permanency and a stable home environment. In fact, the trial court expressly stated that there was no evidence to indicate that guardianship "would create a better environment or encourage respondent . . . to be a healthy addition" to the children's lives. As long as a relative-placement consideration is not "wholly absent from the trial court's best-interest determination," the trial court is not required to articulate specific "magic words" for best interests. See *In re CJM*, ___ Mich App at ___; slip op at 5-6. In this case, the trial court more than

adequately satisfied its requirement to consider relative placement in making its best-interest determination.  See *id*.; see also *In re Gonzales/Martinez*, 310 Mich App at 434.

Affirmed.

/s/ Sima G. Patel
/s/ Mark T. Boonstra
/s/ Thomas C. Cameron